[Crim. No. 242. Fourth Appellate District.—April 24, 1933.]

THE PEOPLE, Respondent, v. HERBERT A. CROGHAN, Appellant.

M. W. Conkling for Appellant.

U. S. Webb, Attorney-General, John L. Flynn, Deputy Attorney-General, Thomas Whelan, District Attorney, and E. P. Buckley, Deputy District Attorney, for Respondent.

CAMPBELL, J., *pro tem.*—The appellant, tax collector of San Diego County, was tried on two indictments, one of which contained 20 counts alleging 12 separate offenses and termed the "Long Indictment"; the other contained 6 counts alleging 2 separate offenses and also two distinct counts alleging acts of perjury. By their verdict the jury found appellant guilty of counts 2 and 5 of the "Short Indictment". The trial court directed a verdict of not guilty on the perjury counts and the jury disagreed as to all of

the remaining counts. The court denied appellant's motion for a new trial, but granted his application for probation.

The counts upon which appellant was convicted charged two separate violations of section 425 of the Penal Code, which reads as follows:

"Officers neglecting to pay over public moneys. Every officer charged with the receipt, safe-keeping, or disbursement of public moneys, who neglects or fails to keep and pay over the same in the manner prescribed by law, is guilty of felony."

Sections 3750 and 3754 of the Political Code also apply to the case at bar, and are as follows:

"3750. Tax collector to note date of payment. The tax collector must mark the date of payment of any tax, or of the several partial payments, as the case may be, in the assessment-book, opposite the name of the person paying."

"3754. Liability of tax collector refusing or neglecting to settle. A tax collector refusing or neglecting for a period of five days to make the payments and settlements required in this title, is liable for the full amount of taxes charged upon the assessment-roll."

Appellant urges three grounds of appeal. (1) That the evidence is insufficient to sustain the verdict. (2) Errors of the court in the admission of certain evidence. (3) Error of the court in refusing to give defendant's requested instructions.

At the outset it will be observed that an appellate court has nothing to do with weighing the evidence on appeal. All intendments favor upholding the judgment and the action of the trial court, and to that end the evidence is to be viewed in the light most favorable to the prosecution.

Appellant's brief consists principally of a negation containing a challenge to point out evidence sufficient to sustain the verdict. Having found the defendant guilty, it must be assumed that the jury believed such testimony as points to his guilt. That evidence is ample to sustain the verdict. Accepting it, and disregarding that which contradicts it, the transcript, which is voluminous, discloses the following material facts:

Appellant was appointed tax collector of the county of San Diego on June 1, 1921, and served continuously in that

capacity until the trial of this action. Various employees of the tax collector's office received payments and appellant also made collections at a special cashier's window, but did not make any entries in any cash book and did not turn his cash over daily, but turned it over at irregular times to the chief deputy or one of the cashiers for entry in the cash book, with the request that the cash be balanced and if there was anything wrong to let him know. The evidence shows that appellant was short in the cash he turned over on frequent occasions; that he personally deposited the collections of his office in the bank. For the year 1929–1930 there was a general shortage in the tax collector's office of $11,918.64. This general shortage was reduced to particular items by showing that certain stubs had been found in the completed stub files that had never been entered on the summary cash book nor included in any apportionment statement. The general shortage was reduced to two assessment-rolls and finally traced to a shortage in assessment-roll number 53 for the sum of $4,128, being the amount involved in the second count of the "Short Indictment", and a shortage in assessment-roll number 42 for the sum of $4,527.04, being the amount involved in the fifth count of the "Short Indictment". Appellant was found guilty on these two counts.

The testimony established the general shortage and reduced it to two particular items.

With reference to the $4,128 item, of which defendant was convicted in count 2 of the indictment, the evidence showed that the payment was made by a check dated December 3, 1928; that the check was given by a taxpayer to appellant personally with the request that appellant "hold it up and not put it through the bank for some time". The check bears bank cancellation date of December 28, 1928. On December 27, 1928, People's exhibit number 31 was written by appellant. This exhibit is the original deposit slip covering the deposit of the check in question in the First National Bank. Appellant testified he had a distinct recollection of handling the account in question; that he made the deposit slip out himself; that he did not know of any other occasion on which he personally made out a deposit slip; that the reason he handled the deposit the way he did was to get the check to the bank as quickly as possible. Appellant tes-

tified that he had no definite recollection of having given the chief deputy the stubs for this collection, but believed he did. The chief deputy testified he never saw the deposit slip in the tax collector's office nor a duplicate of it; that appellant never told him he had deposited a check for $4,128 in December, 1928, although he had several conversations with appellant concerning this account after the close of the fiscal year and particularly about the fact that it had not been entered on the cash books or the summary cash book or the apportionment statements, but had been entered on the assessment-rolls as "paid". The cashiers handling appellant's collections testified that they listed all stubs that came to them for the purpose of listing, yet this payment was not listed. A number of witnesses testified they had never seen a deposit slip similar to exhibit number 31 in the tax collector's office; that they had never seen one made out by appellant.

With reference to the offense alleged in the fifth count of the "Short Indictment", on which count appellant was found guilty, the following evidence directly connected appellant with the payment involved. The payment in the sum of $4,527.04 was received in the mail in the form of a check and the tax receipt bears the "paid" stamp of the chief deputy. Appellant frequently used the regular cashier's stamp at the time this payment was received as he had no stamp of his own. It was also characteristic of appellant to affix the "paid" stamp upside-down, as it appears on People's exhibit number 32. The check (People's exhibit number 33) bears on its reverse side the word "deposited", in appellant's handwriting. Appellant stated that he received the check around May 10, 1929, and that he added the check to a deposit of that date and that this addition was made in his own handwriting; that he does not know why he personally added the check to the deposit slip already made up; that the reason he did not use the regular indorsement stamp on the check was that it possibly was not available; that he is not positive that he turned the stub over to the chief deputy for entry. Three separate searches were made of the records in the tax collector's office for a duplicate deposit slip showing an item of $4,527.04, and none was found. On the morning of December 5, 1931, a search was made for the deposit slip dated May 10, 1929.

The duplicate deposit slips were kept flat in a bundle. In this last search People's exhibit number 34 was found bearing the figures "$4,527.04" written on it but not added to the total. These figures were in appellant's handwriting. On the day exhibit number 34 was found in the tax collector's office the deputy who found it was discharged by the appellant. Search was made but no entry was found for this item in the cash book, although it was posted as "paid" in the assessment-roll. It was not reported to the auditor on the apportionment statements and a sum of money in the amount of the payment was not paid into the county treasury.

Thus the evidence shows that appellant was personally responsible for failing and neglecting to keep and pay over as required by law, the equivalent of checks received in payment of the two accounts involved. The evidence shows generally that the chief cashier had entered in the cash book all payments received by the appellant, and that he turned over to appellant for deposit all moneys he received in his capacity as chief deputy except such as he returned to the taxpayer, and that thereafter appellant had exclusive control of the money. Under this state of facts, it was for the jury to determine whether or not the defendant had actually turned over the stubs of the payments for handling in the regular way, with their resultant entry in the proper books and a report of same given to the county auditor, or whether the defendant wilfully failed and neglected to turn over the stubs of these payments for entry in the proper records with the resultant wilful failure and neglect to pay over the money to the treasurer. The appellant's failure to turn over the records for proper handling was indicative of his failure and neglect to pay over the money. The jury decided these questions adversely to appellant and this court is bound by its finding.

█ Appellant complains that the court erred in admitting People's exhibit number 41, being one of the summary cash books for the year 1929–1930. The summary cash book was one of the cash records kept in the regular course of business by deputy tax collectors under the general supervision of the appellant as tax collector. The books in question, the foundation having been laid, were admitted for what they might show as to any differences that might exist between

payments received and deposited. At the proper time the court gave its instruction number 21 to the jury, properly limiting the purposes for which the books could be reviewed by them. If we read the record correctly the books did not enter into the proof of the offenses of which the appellant was found guilty. Hence there could be no prejudicial error.

█ The instructions requested by appellant were refused for the reason that they were fully covered by other instructions. The court fairly and fully instructed the jury on the law of the case.

The judgment and order from which this appeal has been taken are affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal May 8, 1933.